IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JORDAN KOHLMEYER,                                CIVIL DIVISION

            Plaintiff,                           Case No. 2:26-cv-01605

      v.

CODO MANUFACTURING CORPORATION,

            Defendant.

## COMPLAINT AND JURY DEMAND

A.    *Preliminary Statement*

1.      The plaintiff Jordan Kohlmeyer brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination based upon his race and retaliation for complaining about race discrimination.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* when those claims are raised via an amended complaint upon their maturation on October 15, 2026.  A jury trial is demanded.

B.    *Jurisdiction*

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331.

3.      On or about October 15, 2025, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2026-00135.

4.      The EEOC issued a Notice of Right to Sue dated May 20, 2026.

5.      This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.      ***The parties***

6.      The plaintiff (African American) is an adult individual who, at all times material, resided in Ambridge, PA (Beaver County).

7.      The defendant Codo Manufacturing Corporation ("Codo" or the "company") is an entity doing business in the Commonwealth of Pennsylvania.  At all times material, the defendant had a place of business located at within this district, specifically 7 Avenue B, Leetsdale, PA 15056 (Allegheny County).

8.      At all times material, the defendant employed more than fifteen employees.

9.      The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.      ***Factual Background***

1.      The plaintiff was employed through Express Employment Professionals ("EEP"), a staffing agency that places workers at various companies for short- or long-term assignments.

2.      The staffing agency assigned the plaintiff to work at Codo starting on approximately July 15, 2025.  As detailed below, the plaintiff's employment was terminated on September 30, 2025.

3.      Codo manufactures and distributes imaging products, including carbon papers and films, carbonless papers, dental articulating papers and films and printer imaging supplies.

4.      At all times relevant, the plaintiff was supervised by and reported to management staff of Codo.  These individuals had supervisory control over the plaintiff and assigned him tasks on a daily basis.

5.    Further, Codo reserved the ability to terminate the plaintiff's "employment" for any reason.

6.    Although EEP paid the plaintiff for the hours he worked at Codo, Codo shared responsibility for the wages paid to "temporary" employees, including the plaintiff.  Specifically, Codo paid EEP for each hour worked by each temporary employee, including the plaintiff, and was required to pay overtime charges as applicable for hours worked in excess of 40 each week according to law.  Finally, Codo was required to comply with all applicable federal, state and local laws and regulations concerning employment, including, but not limited to wage and hour, breaks and meal period regulations.

7.    At all times relevant, the plaintiff was employed by Codo and Codo was the plaintiff's employer.

8.    The plaintiff was employed as a general laborer.

9.    The plaintiff performed all the functions of his job in a competent fashion and was an excellent employee.

10.    At all times relevant:

(a)    Jerome Schroeder was the Plant Manager.

(b)    Inez McHaffie was in charge of the temporary employees, including the plaintiff.

(c)    Travis [last name unknown] was a trainer.

(d)    Delvin Gross was a coworker.

(e)    Tony [last name unknown] was a coworker.

11.    During his employment, the plaintiff was subjected to disparate treatment, comments and heightened scrutiny in the terms and conditions of his employment on account of his race.  Some examples follow:

3

(a)     The plaintiff was not offered overtime opportunities despite his requests. Similarly situated white employees (temporary and permanent) were routinely provided with the opportunity to work overtime.

(b)     White coworkers often acted aggressively towards the plaintiff, going out of their way to bump or shove him, asserting that the plaintiff was in the way.  If the plaintiff protested about the physical contact, they would respond with rude comments like, "what the fuck are you going to do about it?"  Similarly situated white employees were not treated in this fashion.

(c)     White coworkers took trash out of trash cans and threw it on the floor. They would insist that the plaintiff pick up the trash and put it back in the can.  White co-workers were not subjected to this by their peers.

(d)     Management closely tracked the plaintiff's attendance and arrival at work, giving warnings or other discipline if the plaintiff was a couple of minutes late or needed to take time off work.  Similarly situated white employees (both temporary and permanent) were not written up or disciplined in similar circumstances.

(e)     McHaffie treated the plaintiff with disdain and disrespect.  Although she was in charge of the temporary employees, she would not acknowledge or willingly talk to the plaintiff.  She often rolled her eyes at him or made dismissive comments when he asked questions or needed to address her. McHaffie did not engage in this behavior with similarly situated white temporary employees.

12.     On or about August 6, 2025, Gross, obviously angry, approached the plaintiff and, in a loud voice, said, "Don't ever use my fucking parking space again!"  The plaintiff tried to calm Gross down, pointing out that the parking spaces are not assigned and that he did not realize that he parked in the space that Gross regularly used.  He assured Gross that it would not happen again.  Gross threatened to "kick the shit" out of the plaintiff right there and then.  The plaintiff declined to fight Gross.  Fortunately, another employee intervened before Gross could throw a punch.  As Gross left the area, he told the plaintiff, "I'll see you outside at 3 [p.m.]."  For the rest of the day, every time Gross saw the plaintiff, he made threatening gestures, including

holding up three fingers as a reminder that Gross intended to meet the plaintiff outside at that time.

13.    At the end of the day, Gross accosted the plaintiff as he was walking to his vehicle.  Gross said, "When you peel off, I'm gonna follow you to your house."  Gross made good on that threat – to a point – following the plaintiff for approximately three miles before taking a turn.

14.    The next day, the plaintiff had a conversation with Travis.  Travis said that he witnessed the incident.  He tried to assuage the plaintiff's concern about Gross' threats of violence.  However, Travis did not report it to anyone in management and did not take any further action.

15.    On September 30, 2025, Gross again confronted the plaintiff.  He was visibly angry and confrontational.  He hurled racial epithets at the plaintiff, including calling him a nigger and a "broke-ass nigger."  He said that he had a gun and was going to shoot the plaintiff later that day.

16.    The plaintiff did not argue with Gross.  He walked away and saw Tony.  He asked Tony to come with him to report this incident to Schroeder.

17.    They found Schroeder working on the floor.  The plaintiff made a report about what happened and specifically told him that Gross had used racial slurs and that this was the second time Gross threatened his life.  Tony corroborated the plaintiff's recitation of events.  Schroeder indicated that he understood the situation and told the plaintiff to stay "on his side of the building" for his own physical safety.  Schroeder left the floor and immediately headed for the main office.

18.    After this meeting, the plaintiff called EEP to report the racially hostile incident.

19. At the end of the day, EEP contacted the plaintiff and told him that his employment with Codo had been terminated effective immediately. The EEP representative could not provide any reason for Codo's decision.

20. Any reason given by Codo was nothing more than a pretext. The plaintiff was discharged in retaliation for filing the incident report with Schroeder and for also filing a report with EEP regarding Gross' use of racial slurs and threats to kill the plaintiff.

21. In addition, the real reason that he was fired was because of his race.

## FIRST CAUSE OF ACTION

22. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

23. The plaintiff is African American and thus is protected against discrimination on the basis of his race pursuant to Title VII.

24. The plaintiff was qualified for his position.

25. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

26. The defendant's discharge of the plaintiff was because of his race in violation of Title VII.

27. In addition, the plaintiff was terminated in retaliation for raising issues about being discriminated against and threatened based on his race.

28. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA (when those claims mature on October 15, 2026), including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
mjb@mjblawoffice.com

Counsel for the plaintiff

Dated:  July 29, 2026